UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Douglas W. Simrell,                                        Case No. 3:23-cv-1382

            Plaintiff,

     v.                                                   MEMORANDUM OPINION
                                                        AND ORDER

Dave White Chevrolet, LLC, *et al.*,

            Defendants.

## I.    INTRODUCTION

Defendants Dave White Chevrolet, LLC, and Dave White Chevrolet, Inc., move to dismiss Plaintiff Douglas W. Simrell's first amended complaint pursuant to Rule 12(b)(1) and (6). (Doc. No. 8). Simrell filed a brief in opposition. (Doc. No. 9). Defendants did not file a brief in reply. Simrell subsequently filed a motion for leave to file a notice of supplemental authority. (Doc. No. 13). Defendants filed a brief in response. (Doc. No. 14).

For the reasons stated below, I grant Simrell's motion and deny Defendants' motion.

## II.    BACKGROUND

Simrell began working for Defendants as a car salesman in April 2019. (Doc. No. 5 at 3). Later that year, he began experiencing sleep-related issues, including excessive daytime sleepiness. In January 2020, he was diagnosed with severe obstructive sleep apnea. (*Id.* at 4). He informed his supervisor, Tracy Stack, and the dealership's executive manager, Joe Mehling, of his diagnosis and they permitted Simrell to take intermittent breaks during the day to rest. (*Id.* at 4-5). If Simrell fell

asleep during the workday, either at his desk or in the staff break room, other employees would wake him up as customers entered the area. (*Id.* at 5).

This arrangement continued without apparent issue until April 2021, when Stack retired and David Mills took over as Simrell's supervisor. Simrell alleges that, while he never received any discipline for sleeping during the workday while Stack was his supervisor, Mills sent him home from work on June 18, 2021, after Mills saw Simrell sleeping during the day. (*Id.* at 5). A week later, on June 25, 2021, Mills suspended Simrell for three days for sleeping at work and informed Simrell that if he were to fall asleep at work again, he would be terminated immediately. (*Id.* at 6).

Simrell alleges he was terminated without explanation on July 8, 2021. Approximately one month later, on August 11, 2021, Simrell was informed he had been terminated for sleeping while at work. (*Id.* at 6-7).

Simrell's termination and the belated explanation came within the context of a different dispute between the parties. On February 20, 2021, Simrell slipped on some ice while at work and fell. (*Id.* at 16; Doc. No. 5-4 at 1). As a result of the fall, Simrell sprained his left wrist and fractured his left elbow. (Doc. No. 5-5 at 1). Simrell filed a claim for workers' compensation related to his injury but was able to continue working at the time. (Doc. No. 5 at 16). Simrell's workers' compensation physician approved him for surgery on June 15, 2021, and Simrell informed Defendants on July 8, 2021, that he required surgery and that it would be scheduled in the near future. (*Id.* at 16-17). Simrell then was terminated just hours later. (Doc. No. 5-5 at 2). The Ohio Industrial Commission concluded Simrell was "temporarily and totally disabled" due to his elbow injury and awarded him workers' compensation benefits. (*Id.* at 1). On January 3, 2022, Simrell filed suit in the Lucas County, Ohio Court of Common Pleas, asserting one claim of workers' compensation retaliation. (Doc. No. 5 at 15).

On April 21, 2022, 287 days after his termination, Simrell filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 5 at 3). The EEOC issued Simrell a notice of right to sue one year later, on April 26, 2023. Simrell then dismissed his state court case without prejudice and filed suit in this court on July 18, 2023, reasserting his workers' compensation retaliation claim and adding additional claims for disability discrimination and retaliation, in violation of Ohio and federal law. (*See* Doc. No. 1).

### III. STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### IV. ANALYSIS

Defendants move to dismiss all claims in the First Amended Complaint. They contend Counts 1 through 6 (the "Disability Claims") are barred by the failure to exhaust administrative remedies or by the applicable statute of limitations and that, once the Disability Claims are dismissed, this court will lack subject matter jurisdiction over Count 7 (the "Workers' Compensation Claim"). Defendants' arguments are not persuasive.

Title VII generally requires a plaintiff to file a charge of discrimination with the EEOC within 180 days of a defendant's alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). This limitations period is extended to 300 days when the plaintiff is deemed to have "initially instituted

3

proceedings with a State or local agency with authority to grant or seek relief from such practice." *Id.* A "State or local agency," such as the Ohio Civil Rights Commission ("OCRC") also is referred to as a fair employment practice agency ("FEPA").

Defendants first argue Simrell did not exhaust his administrative remedies as to Counts 2, 4, and 6 (which allege violations of Ohio law) because Simrell did not file an administrative claim with, and receive a notice of right to sue from, the OCRC, as required by Ohio Revised Code § 4112.052(B)(1). (Doc. No. 8 at 8-10).

But that statute does not strictly require a plaintiff to obtain a right-to-sue letter from the OCRC. Instead, it permits a plaintiff to sue for discriminatory employment practices under Ohio law without obtaining an OCRC right-to-sue letter if the individual files a charge with both the OCRC and the EEOC and obtains a right-to-sue letter from the EEOC. Ohio Rev. C. § 4112.052(2)(b)(i)-(iii).

There is no dispute Simrell obtained an EEOC right-to-sue letter. (Doc. No. 5-1). Defendants claim the EEOC letter does not cover any alleged violations of Ohio law because the EEOC did not make reference to such violations in the right-to-sue letter. (Doc. No. 8 at 9-10). But Simrell alleges he filed a charge of discrimination with the EEOC containing allegations Defendants violated both federal and Ohio law by discriminating against him on the basis of his disability. (Doc. No. 5 at 3). While Defendants deride this factual allegation as "baseless," (Doc. No. 8 at 10), it is entitled to the presumption of truth at the pleadings stage. *See Daily Servs., LLC,* 756 F.3d at 896. The absence of a reference to Ohio law in the EEOC right-to-sue letter does not disprove Simrell's assertion that he alleged violations of Ohio law in his charge of discrimination.

Next, Defendants argue Simrell's EEOC filing does not satisfy § 4112.052's requirement that he file an OCRC charge. (Doc. No. 8 at 9). Defendants' argument again falls short.

4

The EEOC and the OCRC are parties to a worksharing agreement, "which is designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate State and Federal laws." (Doc. No. 5-2 at 1).[1] The agreement continues:

> In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. The EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purposes of Section 706 (c) and (e) (1) of Title VII.

(*Id.* at 2).

The validity of worksharing agreements such as this one is well established in federal law. As the United States Court of Appeals for the Sixth Circuit as noted, "the Supreme Court has held that the EEOC may institute proceedings with a FEPA on behalf of an employee." *Jones v. Fed. Express Corp.*, 952 F.3d 815, 818 (6th Cir. 2020) (citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 816 (1980)) (further citation omitted). In *Jones*, the Sixth Circuit joined nine other Circuit Courts of Appeal in holding "worksharing agreements between the EEOC and FEPAs are self-executing, permitting the EEOC to commence proceedings when the charge is filed." 952 F.3d at 819 (citing cases).

In the worksharing agreement, the OCRC explicitly designated the EEOC as "its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges." (Doc. No. 5-2 at 2). The OCRC and the EEOC reaffirmed their agreement on November 3, 2021, nearly six months after Ohio Revised Code § 4112.052 was amended to require administrative exhaustion of discrimination claims under Ohio law. *See, e.g., Smith v. Lorain Cnty. Veterans Serv. Comm'n*, No. 1:21-CV-01525, 2024 WL 1375946, at *7

---

[1] Defendants imply the worksharing agreement is invalid because it "expired on September 30, 2021." (Doc. No. 8 at 9) (citing Doc. No. 5-2 at 6). But Defendants ignore the very next page of Simrell's filing – an agreement extending the operative term of the worksharing agreement until September 30, 2022. (Doc. No. 5-2 at 7). The record evidence plainly establishes the worksharing agreement had not "expired" before Simrell filed his EEOC charge on April 21, 2022.

5

(N.D. Ohio Mar. 30, 2024) ("Ohio Revised Code Section 4112.052(B)(1)(a), which became effective in April of 2021, added an exhaustion requirement to Ohio's disability discrimination statute, where there was none previously . . . ."). The parties extended the worksharing agreement as originally written, concluding there had been "no substantive changes in the . . . statutes . . . that would adversely affect or substantially alter the work sharing arrangement . . . or that would affect the processing of charges filed under the pertinent Federal, state or local statutes . . . ." (Doc. No. 5-2 at 7).

In other words, the worksharing agreement plainly indicates the parties were aware of the change in Ohio law and concluded that change did not limit the OCRC's ability to designate the EEOC as its agent to accept charges of discrimination under Ohio law. I conclude the EEOC had the authority under the worksharing agreement to accept Simrell's charge of discrimination alleging violations of Ohio law and I further conclude that, as the result of the EEOC's express agency authority, Simrell's EEOC filing satisfies the requirements of § 4112.052(B)(2)(b). Therefore, I deny Defendants' motion to dismiss to the extent Defendants contend Simrell did not exhaust his administrative remedies under Ohio law.[2]

Finally, I also deny Defendants' motion to dismiss to the extent it contends Simrell's EEOC filing was untimely. Defendants concede Simrell filed his EEOC charge 287 days after he was terminated. (Doc. No. 8 at 12). Title VII permits plaintiffs in deferral states such as Ohio to file charges of discrimination within 300 days of the alleged unlawful employment practice, rather than the usual 180-day deadline. 42 U.S.C. § 2000e-5(e)(1). The worksharing agreement provides that "[t]he EEOC's receipt of charges on the FEPA's behalf <u>will automatically initiate the proceedings of</u>

---

[2] Defendants also argue Simrell's Ohio claims are not ripe because he did not receive a notice of right to sue from the OCRC. (Doc. No. 8 at 10). This argument also is not persuasive, as it is clearly at odds with the plain text of § 4112.052(B)(2)(b)(iii), which provides that a plaintiff is not required to obtain a notice of right to sue from the OCRC if he was received such a notice from the EEOC.

6

both the EEOC and the FEPA for the purposes of [§ 2000e-5(e)(1)]." (Doc. No. 5-2 at 2) (emphasis added).

The Sixth Circuit has expressly upheld the efficacy of worksharing agreements in these circumstances. *Jones*, 952 F.3d at 820 (holding plaintiff's "filing with the EEOC was timely by virtue of the worksharing agreement"). I conclude the terms of the worksharing agreement in this case satisfy the required conditions in § 2000e-5(e)(1) and extend the filing deadline to 300 days.[3] Because Simrell filed his charge with the EEOC 287 days after he was terminated, the charge was timely filed.

## V. CONCLUSION

For the reasons stated above, I deny Defendants' motion to dismiss. (Doc. No. 8). I grant Simrell's motion for leave to file supplemental authority, (Doc. No. 13), as unopposed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

---

[3] Defendants attempt to minimize the scope of the worksharing agreement, asserting "[i]t simply authorizes the exchange of information between two . . . government agencies." (Doc. No. 8 at 9). As I have stated throughout this opinion, the worksharing agreement unambiguously does far more than that.